**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 2:23-07-MMB** |
| DAVID DUNN | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On August 3, 2023, defendant David Dunn pled guilty to Count One of the Indictment, charging him with manufacturing and attempted manufacturing of child pornography, in violation of 18 U.S.C. § 2251(a), (e). He faces a minimum term of imprisonment of 15 years and a maximum of 30 years for his conviction of Count One. Based upon a total offense level of 43 and a criminal history category of I, his sentencing guideline imprisonment range would normally be life. However, because the statutory maximum of 30 years is less than the minimum of the applicable guideline range, the guideline term of imprisonment is 30 years.

The defendant has been engaged in the production, distribution, receipt, and collection of child sexual abuse material for a significant amount of time. As more fully detailed below, the defendant has been sexually attracted to minors as young as 8 years of age, since the 1990s. The defendant has worked alone and in concert with other adult men to sexually exploit minor victims across countless online platforms. His conduct deserves a very serious sentence. For the reasons below, the government recommends that the defendant be sentenced to a term of 25 years' imprisonment followed by a lifetime of supervised release.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence of 25 years and lifetime on supervised release.

## I.     **BACKGROUND**

This case arose from an FBI investigation into offenders engaged in what is known as "crowdsourcing" child pornography. In such a scheme, offenders work together toward the common purpose of sexually exploiting minors over the Internet, obtaining images and videos of that sexual exploitation, and then sharing that material within a group of offenders.

**A.      Investigation of A.E. in Florida Leads to the Defendant.**

In August of 2022, the FBI executed a search warrant at the Florida residence of "A.E." A.E. used multiple online social media accounts to pose as minor males and females, coercing and threatening minor victims to engage in sexually explicit conduct. A.E. recorded the conduct and shared it with other offenders, including the defendant. The FBI located a Telegram account used by A.E. to engage in this conduct. (Telegram is an encrypted chatting platform that generally does not respond to legal process.) While searching A.E.'s Telegram account, the FBI identified a Telegram conversation between A.E. and the defendant.

Over Telegram, the defendant and A.E. exchanged approximately 3,000 private messages between March 30, 2022 and August 29, 2022. In these Telegram messages, the defendant discussed countless minors in a sexual manner, sent and received sexually explicit files of minors, and discussed the minors that the defendant and A.E. could work together to sexually exploit. For example, on August 19, 2022, the defendant sent A.E. twelve images of the same minor female. Several of the images depicted the minor exposing her nude pubic area, anus, and chest to the camera. The minor had little to no breast development and no pubic hair.

The defendant also communicated with other offenders via Telegram. He engaged in the same types of conversations and exchanged sexually explicit files of minors with these users. The defendant linked his personal phone number to his Telegram account, allowing for the FBI to easily identify him as the user of the account.

The defendant and A.E. also communicated on other platforms like Likee (a live streaming social media platform) and Snapchat (a social media and instant messaging platform). During an interview with the FBI, the defendant stated that he first met A.E. on Likee after realizing they were both adult men posing as minors.

3

**B.**  **Defendant's Snapchat Account, Telegram Account, and Galaxy S22 Contain Evidence of Sexual Exploitation of Minor #1 in Count One.**

On Snapchat, the defendant and A.E. continued to communicate about the sexual exploitation of minors. The defendant utilized the usernames "kiley_butterfly" and "t_yaboi2020." A search warrant was served on Snapchat for both defendant's accounts. The kiley_butterfly account was created on March 10, 2022 and the t_yaboi2020 account was created on January 3, 2020. A review of the content provided by Snapchat revealed the defendant used both accounts to further the sexual exploitation of minors. That is, he used the accounts to exchange sexually explicit files of minors and to pose as a minor to coerce and persuade other minors to engage in sexually explicit acts, which on many occasions he then recorded unbeknownst to the minors.

The FBI located a conversation on the kiley_butterfly account from August 22, 2022, with identified victim "Minor #1" (the charged victim in Count 1 of the Indictment). Below is an excerpt from the conversation:

Minor #1:     I really wish though and yeah I am really far through hold up I will do something real quick

Defendant:     (Emoji) Ok me too

Minor #1:     So hot (emoji)
Hold up I am going to do one

Defendant:     kk thanks baby
Same for you I'd do anything
Yummy (emoji) I love it (emoji) baby
So hot

Minor #1:     Thank you so much I love yours so much too (emojis)

Defendant:     Thanks and can you imagine doing it together in bed

4

As described below, multiple digital devices were seized from the defendant's residence after the completion of a residential search warrant. A manual review of the defendant's Samsung Galaxy S22 cellular phone, revealed a photo gallery folder on the phone titled, "Hidden." Within the "Hidden" folder was a subfolder labeled with Minor #1's first and last name. A video dated August 22, 2022, was found in the folder. The video was 0:21 in length. The video was of a minor female masturbating with her hand. The female had little to no pubic hair.

During the review of the Telegram chat between the defendant and A.E., the FBI found that on August 23, 2022, the defendant sent A.E. a message stating Minor #1's first name followed by a photo and three videos. One of the videos is the same 0:21 video described above. The defendant then messaged to A.E., "It wasn't the best but at least she's back now. She said she will do more in the morning if she can."

A further review of the defendant's kiley_butterfly Snapchat account revealed that on August 23, 2022, the defendant exchanged the following messages with Minor #1:

| | |
|---|---|
| Defendant: | I can do one in bed real quick |
| Minor #1: | Ooo |
| Defendant: | Brb |
| Minor #1: | Okay<br>So yummy<br>So hot |
| Minor #1: | Ima do one okay and I will make it good for you<br>And Yw |
| Defendant: | Ok baby can you do it with better light or no |
| Defendant: | I loved it baby and you have some hair on your pussy I didn't notice but it's so nice I wanna just lick you (emoji tongue out) |

down there all night long And I'll be back as soon as I'm done
baby

During the manual review of the defendant's Samsung Galaxy S22 cellular phone in the same "Hidden" folder and subfolder with Minor #1's name, a video dated August 23, 2022, was located. The video was 1:02 in length. The video was of a minor female masturbating with her hand. The minor female also showed her chest and anus in the video. During a review of the Telegram conversation between the defendant and A.E., the FBI found that on August 23, 2022, the defendant sent A.E. the message, "[Minor #1's first name] tonight," followed by three videos. One of the videos is the same 1:02 video described above.

On August 3, 2022, the defendant had the following conversation with Minor #1, showing the defendant's knowledge of Minor #1's age:

Defendant:      How old are you?   I'm 11

Minor #1:       I'm 10

Defendant:      Ok (thumbs up emoji)

Minor #1:       My birthday is in May 17th

Defendant:      Mine is Sept 15

Later, on August 3, 2023, the defendant exchanged the following messages with Minor #1:

Minor #1:       And when your older you can whatever you want

Defendant:      Yess I cant wait till Im 18 and can do whatever

Minor #1:       Samemeeee

Defendant:      Yay

Minor #1:       8 more years

Defendant:      We should sleep baby
Yep

Minor #1:        Yeah I know

Defendant:       7 for me

Minor #1:        Wait your 11

Defendant:       Your 10 when will you be 11
                 Yes

Minor #1:        When did you turn 11

Defendant:       Idc that your 10
                 September

**C.    Search of the Defendant's Home Revealed Additional Evidence of Child Exploitation Offenses.**

As noted above, in December 2022, a residential search warrant was executed at the defendant's residence. The FBI found a Samsung Galaxy S22 cellular telephone, bearing IMEI 354214988703814, located on the defendant; a Samsung S8 Cellular Phone, bearing IMEI 357756083261277, hidden in the defendant's garage; an Amazon tablet, model T76N2B; and a blue HP laptop. The two cellular phones contained large amounts of child sexual abuse material.

Many of the files located on the devices were of screen recorded conversations the defendant engaged in with minor victims on different social media platforms. The defendant can be seen chatting with the minors and persuading the minors to engage in sexually explicit acts while on live streaming or other social media platforms. On many occasions, the defendant screen recorded the minors engaged in sexually explicit conduct without the minors' knowledge or consent. In some of the recordings, the defendant used "filters" like cat ears on his fake profile accounts when communicating with the minors. On a few occasions, these filters can be viewed on the defendant's real face prior to the defendant starting or continuing a conversation with a minor victim.

Also located on his devices, were many conversations where the defendant

communicated with other offenders and shared the sexually explicit content he produced of minor victims. The defendant also shared with other online users certain techniques to be more successful at sexually exploit minors. For example, in one conversation, the defendant explained to a fellow offender that the user should create a fake "@mail" email account so that the user could register fake social media accounts. The defendant explained that he also used an @email account to do this.

A forensic examination revealed, the defendant's Galaxy S22 cellular phone contained 1,076 images and 1,187 videos depicting child sexual abuse material. The files of CP depicted mostly prepubescent children, boys and girls, engaged in sexual activity, to include oral sex, vaginal sex, masturbation, and exposing their genitals. Some files depicted sadomasochistic abuse. For example, a video file titled, "jbntiedown.mkv" that was 1:01 in length, depicted a prepubescent female, laying face down on a bed, with her wrists and ankles bound to the bed frame. An adult male pulls the female's hair, then moves her underwear to the side exposing her genitals. Multiple files on the devices depicted toddlers engaged in sexually explicit conduct. For example, an image file titled, "photo_2022-10-07_10-42-35," depicted an adult male inserting his penis into a female toddler's mouth. An additional 1,475 images and 313 videos were located that depicted child erotica.

The defendant had several email accounts setup on the device, many of which the defendant used to create fake social media profile accounts. The following Google accounts were set up on the device: ddunn19650@gmail.com, ddunnn1204@gmail.com, kileyrudell20@gmail.com, kileyrudell06@gmail.com, rudellkiley@gmail.com, kadinbrooks89@gmail.com, kileyrudell777@gmail.com, exposingfakes481@gmail.com, cecilman82@gmail.com, glandry168@gmail.com, gavinlandry81@gmail.com,

landrygavin40@gmail.com, landrygavin10@gmail.com, joeyvitale62@gmail.com,

joeyvitale46@gmail.com, joeyvitale9@gmail.com, tylerroman29@gmail.com.

The following social media accounts and applications were found on the device:

Snapchat account, kiley_butterfly; Telegram account, itsjustme (phone number +1 (267)905-

8569); Likee account, imabadboy (Age 13, Male); JusTalk Kids account, JoeyVitale22;

Instagram account, david.dunn39108; TikTok account, @tyty_yaboi2020; WhatsApp account,

Kiley_butterfly; Discord; and the Tor Browser.

A forensic examination revealed, the defendant's Galaxy S8 cellular phone contained

1,241 images and 303 videos depicting child sexual abuse material. The files of child sexual

abuse material mostly depicted prepubescent children, boys and girls, engaged in sexual activity,

including oral sex, vaginal sex, masturbation, and exposing their genitals. An additional 588

images and 6 videos were located that depicted child erotica.

### D.      The Defendant Confessed.

During execution of the search warrant at his home, the defendant provided a voluntary

recorded statement to the FBI. Among other information, the defendant confessed to being a

producer, receiver, distributor, and possessor of child pornography. More specifically, the

defendant stated the following. The defendant had been attracted to minor females since

approximately the mid-90s after he turned about the age of 30. He sought out minor females who

are between the ages of 10 and 15 years of age.

The defendant has shared over 1,000 images of child sexual abuse material. The

defendant posed as a minor male and minor female online to entice minor females to

communicate with him. The defendant did this using social media applications such as Likee and

Snapchat. The defendant acquired numerous nude photos from minor females on Snapchat and

Likee. To entice the minor females to send him child sexual abuse material or to engage in sexually explicit acts, the defendant built trust with these minor females over time. Sometimes the defendant sent minor females naked photos of a minor male he was pretending to be. The defendant acquired photos of the minor male by accessing the dark web (Tor hidden services) and downloading child sexual abuse images of the boy.

The defendant further admitted that he participated in Telegram chats with other adult males who were also sexually attracted to minors. The defendant's username on Telegram was @Itsonlyme2020. He also utilized the username Tyler_yaboi. The defendant used Telegram because it was encrypted and secure. The defendant and A.E., whom he knew as "Nova," traded child sexual abuse material on Telegram. The defendant and A.E. exchanged messages on Snapchat and were in group chats together with minor females. The defendant and A.E. enticed minor females to send them nude photos and videos. The defendant and "A.E." then traded the child sexual abuse material on Telegram.

When interacting with minor females online, the defendant asked minor females to perform specific nude poses. The defendant masturbated to child pornography. The profile picture on the defendant's Tyler_yaboi Telegram account is of a boy he did not know personally. The defendant met a minor female online and the boy was a friend. The defendant last spoke online with a minor female the morning he was detained by the FBI on December 13, 2022. He last received child pornography the day before on December 12, 2022.

    E.    **Summary of the Defendant's Child Victims.**

The FBI has been working hard to identify the defendant's victims. After submitting the files located on the defendant's cellular phones to the National Center for Missing and Exploited Children ("NCMEC"), it was determined that the defendant's collection contained a total of 45

identified series. As far as the minor victims the defendant personally communicated with and enticed to engage in sexually explicit conduct, the FBI has been able to identify 12 of the minor victims, including the minor victim listed in Count 1. Of the 12 minor victims, the children ranged between the ages of 8 and 13 years old when the defendant offended against them, with the majority of the victims being 10 or 11 years of age.

## II.    SENTENCING CALCULATION

### A.    Authorized Statutory Penalties

The maximum sentence authorized by law for violating a single count of 18 U.S.C. § 2251(a) is 30 years' imprisonment, with a 15-year mandatory minimum term of imprisonment; 5 years to a lifetime of supervised release; a $250,000 fine; and a $100 special assessment. The defendant is also subject, under 18 U.S.C § 3014, if found to be not indigent, an additional assessment in the amount of $5,000, and under 18 U.S.C. § 2259A, to an assessment of no more than $50,000. The defendant is also subject, under 18 U.S.C. § 2259, to mandatory restitution of not less than $3,000 per victim.

### B.    Guidelines Calculation

U.S. Probation correctly calculated the defendant's Sentencing Guidelines range as follows:

- Base Offense Level of 32. U.S.S.G. §2G2.1(a).

- SOC of 4 levels because of victims who were less than 12 years of age. §2G2.1(b)(1)(A).

- SOC of 2 levels because the offense involved the commission of "sexual contact." §2G2.1(b)(2)(A).

- SOC of 2 levels because the defendant knowingly engaged in distribution. §2G2.1(b)(3).

- SOC of 2 levels because the offense involved the use of a computer to entice. §2G2.1(b)(6)(A) and (B).

- Chapter Four enhancement of 5 levels for the defendant's pattern of activity involving sexual conduct. §4B1.5(b)(1).

- Acceptance minus 3 levels. §3E1.1(a), (b).

- Total offense level of 44, but the offense level will be treated as a level 43. *See* Chapter 5, Part A (comment n.2).

- Based upon a Total Offense Level of 43 and Criminal History Category of I, the defendant's sentencing guidelines range is Life.

- However, the statutorily authorized maximum sentence of 30 years is less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 30 years. *See* USSG §5G1.1(a).

Neither the government nor the defendant has lodged any objections to the calculation in the PSR. Accordingly, the government respectfully requests that the Court adopt the uncontested calculation contained in the PSR, and determine that the applicable Sentencing Guidelines imprisonment range is 30 years imprisonment.

**III.   ANALYSIS**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one of 25 years and lifetime on supervised release.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and

impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As noted above, the parties and the Probation Office agree that the applicable sentencing guidelines range is life, but adjusted to the statutory maximum of 30 years, satisfying the first step of the sentencing process. As to the second step, there are no departure motions that are appropriate here. Third, for the reasons outlined below, a sentence of 25 years' imprisonment followed by lifetime supervision is sufficient, but not greater than necessary, in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).

### A.      Nature and Circumstances of the Offenses.

The defendant acting alone and with other users, has sexually exploited numerous minor victims, many of which were prepubescent. The defendant was relentless in his effort to sexually exploit very young minor females. He created countless fake online social media accounts, posing as a 10- or 11-year-old minor. He tricked little girls into believing he was their friend, girlfriend, or boyfriend to gain their trust. He communicated with the minors about very personal things going on in their lives at the time. The children felt safe talking to him. All the while he was doing this for one reason and that was to satisfy his selfish twisted sexual desires.

When his effort alone was not enough to succeed in his goals, he utilized the help from other offenders to communicate with the minors and to entice the children to engage in sexually explicit conduct. The defendant convinced the minors to join group chats where multiple offenders would convince them to do sexual acts and to send sexually explicit images and videos of themselves. After obtaining the sexually explicit content from the minors, the defendant then exchanged the files with countless other offenders over multiple social media platforms. The defendant chose to use encrypted platforms like Telegram to exchange the content as he knew such platforms were much harder for law enforcement to infiltrate.

The children were very young that the defendant was sexually attracted to and exploited. Of the twelve minor children the FBI has identified, the ages of the children ranged from 8 to 13 years of age. This sexual attraction to little girls was certainly not a new feeling for the defendant. As the defendant himself admitted, he has been sexually attracted to children since the 1990s. This is a troubling amount of time that the defendant has been sexually interested in minors.

This is not the first time the defendant has been caught for engaging in this type of conduct. The FBI interviewed the defendant's children. One of his children told the FBI that

approximately four years prior to the defendant's arrest, he found inappropriate pornography and social media applications on the defendant's cellular phone. At that time, the defendant's son took his cellular phone, deleted the applications, and installed "parental controls" on the device. Unfortunately, these measures did not stop the defendant from producing, distributing, and receiving child sexual abuse material.

The impact on the victims in this case cannot be understated. Under seal, the government has filed victim impacts statements from the victims and the victims' families describing the devastation wrought by the defendant. Collectively, these victim impacts statements demonstrate that—while much of the defendant's actions took place over the Internet with the victims in different places—the effects from these crimes are as demoralizing as any other type of child exploitation crime. Here is just a fraction of some of those real-world consequences left in the wake of the defendant's crimes:

- The mother of R.R. (11 years old at the time of offense) states, "he stole something so big from my daughter, a piece of her pure spirit that she will never get back. And what he did to me was destroy that very thing I wanted so bad to do… be her protector and keep her safe. Not only is my daughter scarred forever but so am I."

- As the mother of L.W. (13 years old at the time of the offense) explained, the victim and their entire family are scared. She has "little trust of who might be trying to contact her or who is trying to get [her] child's picture or information."

- The therapist for L.A. (10 years old at time of offense) describes that the victim displays symptoms of both an adjustment disorder and acute post-traumatic stress disorder with documented changes in behavior, functioning, and relationships since the sexual abuse first began in 2022. Further, that the victim has experience increased anxiety and panic, hyper-vigilance, and patterns of insomnia the past year. The victim is "terrified constantly."

- The mother of K.F. stated, "my daughter was conned into believing that she was just having girl talk with another teenager." The mother further stated that she had to explain to her daughter who she was really talking to and that her daughter was scared and had bad dreams that the defendant would find her and take her away.

These and the other victim impact statements all share common themes. The defendant has forever altered the lives of countless children and their families. Something as simple as a school photo or a cellular phone is now the source of immense apprehension. The scars the defendant has created will stay with these victims and their families. What was no doubt a fleeting thrill for the defendant and his online buddies is a traumatic event that will affect these victims and their families for many years to come.

The defendant and the other offenders with whom he committed these crimes callously normalized sexual behavior that is completely abnormal. They have robbed these young children, some as young as eight years old, of their innocence. For those victims that have been identified, hopefully their parents are able to help bring healing and restore them day by day. But for those victims not identified—likely in the hundreds—there is no telling what damage the defendant has caused.

**B.      History and Characteristics of the Defendant.**

The defendant has been sexually attracted to minors since the mid-90s and was actively sexually exploiting children the morning he was arrested by the FBI. The defendant was technically savvy enough to utilized countless different platforms to engage in this conduct including the dark web (Tor hidden services). He was also savvy enough to teach other offenders how to sexually exploit minors more effectively over the Internet.

Although the defendant has no criminal history on paper, as noted above, his son caught him engaged in inappropriate pornography activity approximately four years ago. The son confronted the defendant, took his cellular phone, and installed parental controls on the device. This unfortunately did not stop the defendant. This suggests that the defendant's criminal behavior was not an aberration. At any time, the defendant could have stopped using any one of

these platforms, but instead he chose the path of continuing to sexually abuse children. The only thing that has caused him to stop, is the fact that he has been detained since the FBI executed a search warrant at his residence.

At the time of his arrest, the defendant was living with a loving family (wife and two children) and maintained a job. It appears the defendant was residing in a positive environment. The defendant could have sought help from his family or mental health treatment. But instead, he chose to engage in these crimes while concealing his criminal activity. There is simply no excuse or justification for the defendant's conduct.

Recently, the defendant was diagnosed with stage 4a recto adenocarcinoma. This is obviously a very serious medical diagnosis. Before treatment, an oncologist placed the defendant's life expectancy at 12-24 months. Consequently, the defendant's medium-to-long-term chance of survival is not good. However, the defendant is currently responding to treatment. And if his liver tumor is reduced sufficiently, he may be able to have surgery to further his chances at a better prognosis. A better estimate of his prognosis and life expectancy is likely forthcoming. Ultimately the defendant is able to obtain medical care while incarcerated, and therefore his sentence should not be reduced because of his health issues. The government is sympathetic to the defendant's health situation. But the defendant's crimes—which were committed over a long period of time against at least 12 child production victims and countless more for possession and distribution victims—were among the most serious in the criminal code. And his sentence must match his criminal conduct, particularly given the deleterious effects on so many child victims.

    **C.**    **Adequate Deterrence.**

Unfortunately, but undeniably, there are others who share the defendant's sexual interest in children, and who have both the opportunity to sexually exploit and manipulate children over the Internet in the same way as the defendant. The sentence imposed by the Court must discourage those persons from acting on those opportunities by demonstrating the substantial penalties awaiting defendants convicted of these crimes and especially those defendants who have been engaged in tech savvy schemes like those in this case.

Both specific and general deterrence call for a significant sentence in this case to send a message to the defendant and others: using fake personas to impersonate young girls and boys to trick minor girls into producing child pornography will result in a substantial federal prison sentence. These schemes targeting children online are only becoming more common, so a significant sentence is an important message to would-be offenders.

### D.     Need for Sentence to Protect Public from Further Crimes of Defendant.

The sentence imposed must protect the public from further crimes committed by the defendant, who has amply demonstrated both his own sexual desire for minor children and the dedication and time he is willing to put forth in order to fulfill his sexual desires. The defendant sexually exploited children across multiple social media platforms. He also shared images and videos of children engaging in sexual acts. The amount of pain and suffering of the families affected by this conduct is impossible to calculate. The victim impact statements provide the Court just a glimpse of that pain.

### E.     Need to Avoid Unwarranted Sentencing Disparities.

This Court and this district has encountered many cases involving the production of child pornography and the enticement of children by adults. A sentence of 25 years imprisonment is well within the heartland of similar types of cases.

IV.     **FORFEITURE AND RESTITUTION**

The government requests that the Court enter an order of forfeiture at sentencing. The government has filed a preliminary order of forfeiture, which it will ask to become final at sentencing. In terms of restitution, the government is requesting an additional 30 days in order to collect all required documentation for the restitution requests in this case. Per the defendant's plea agreement, the defendant agreed "pursuant to 18 U.S.C. § 3664(d)(5), that the court may defer the imposition of restitution until after the sentencing; however, the defendant specifically waives the 90-day provision found at 18 U.S.C. § 3664(d)(5) and consents to the entry of any orders pertaining to restitution after sentencing without limitation." As such, the government is requesting additional time to submit restitution requests in this case. This is just and proper in this case where there are numerous victims, and this case proceeded to sentencing on a shorter timeline.

V.      **DISMISSED COUNTS**

In accordance with the plea agreement, at sentencing the government intends to dismiss Counts Two and Three of the Indictment at sentencing.

VI.     **CONCLUSION**

The defendant committed appalling crimes over an extended period of time. The government's recommendation is informed by all the § 3553(a) factors, with a particular emphasis on the need for just punishment and to protect the public from the defendant.

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 25 years' imprisonment, a lifetime term of supervised release, forfeiture, restitution to be decided later (retaining jurisdiction), and a $100 special assessment.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*s/Kevin Jayne*
KEVIN JAYNE
Assistant United States Attorney

*s/Kaylynn Foulon*
KAYLYNN N. FOULON
Trial Attorney, CEOS

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 15, 2023, I filed a copy of the foregoing document with the Clerk of the Court, and served a copy upon all counsel of record, via email.

<u>*s/Kevin Jayne*</u>
KEVIN JAYNE
Assistant United States Attorney